# In the United States Court of Federal Claims

| | |
|---|---|
| DARNELL R. CARTER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 26-cv-517<br>Filed: October 16, 2026 |

*Darnell R. Carter* proceeded *pro se*.

*Eric J. Smith* of the United States Department of Justice, Civil Division, Washington, D.C., for Defendant. With him on the briefs were *Jason Bergmann*, *Joshua Wu*, and *Brett A. Shumate*, of the United States Department of Justice, Washington, D.C.

## MEMORANDUM AND ORDER

Darnell R. Carter (Plaintiff), proceeding *pro se*, filed this action against the United States (Defendant) under 26 U.S.C. § 7422(a) seeking a refund for alleged overpayment of his 2023 federal income taxes. ECF No. 1 (Complaint or Compl.) ¶¶ 2, 8.[1] Defendant moves to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (Rules). ECF No. 9 (Motion to Dismiss or Mot.) at 1.

For the reasons stated below, this Court must dismiss the Complaint because (i) the Court lacks subject matter jurisdiction over Plaintiff's claims, and (ii) Plaintiff fails to adequately state a claim upon which relief can be granted. Accordingly, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED**.

---

[1] Citations throughout this Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

# **BACKGROUND**[2]

## I. Plaintiff's Real Estate Seizure Attempt

In June 2020, Plaintiff attempted to claim ownership of a piece of real property in Ventura County, California. ECF No. 9-1 at 6–8. He sent a cashier's check for $800 to the trustee of a trust owning property at 3970 Victoria Lane in Ventura County, which the trustee deposited. *Id.* at 7. At the same time, Plaintiff published a "legal notice" in a local newspaper, announcing that the check would be "[v]alue and consideration" for the purchase of the property. *Id.* Plaintiff then brought an action to quiet title in California state court under the name "Yachim Ben-Yashar'el." *Yasharel v. Hilltop Tr.*, No. 56-2021-00549871-CU-OR-VTA, 2021 WL 12133880, at *1 (Cal. Super. Ct. Aug. 30, 2021). The trial court dismissed, finding Plaintiff's claim to the land "patently and unquestionably frivolous." *Id.* at *2. The state appellate court affirmed. *Ben-Yashar'el v. Kirschbaum*, No. 2D CIV. B315184, 2022 WL 2763324 (Cal. Ct. App. July 15, 2022).

## II. Plaintiff's UCC Filings and Purported Tax Payments

After his defeat in state court, Plaintiff continued to hold himself out as the true owner of the Victoria Lane property. On September 19, 2023, he filed a UCC-1 financing statement with the California Secretary of State that purported to secure a debt against Hilltop Trust—the entity that owns the Victoria Lane property—listing himself and Bank of America (BOA) as secured parties. ECF No. 1-2 at 8. Attached to the financing statement was a document[3] in which Plaintiff claimed to assign his "interest" in the Victoria Lane property to BOA as "collateral" to secure a $12,000,000 "line of credit" that BOA was purportedly "order[ed]" to provide him. *Id.* at 11–12.

---

[2] The Court takes all uncontroverted allegations in the Complaint as true for purposes of the Motion to Dismiss. *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020) (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017)).

[3] The Court references this document as the "BOA Document."

Plaintiff also apparently believed that he was entitled to compensation from Ventura County for rejecting his claim to the Victoria Lane property. *See id.* at 4–7. To that end, he filed another UCC-1 form on November 8, 2023, identifying Ventura County as his debtor. *Id.* at 3. The attached document[4] purported to "order[]" the County to pay Plaintiff $24,000,000 in "damages" for "fraud, extortion, failure to perform a public duty, and emotional distress caused for fear of losing priority of chain of title" to the Victoria Lane property. *Id.* at 4, 7.

Both documents included language purporting to make the related "obligations" payable to the IRS. *Id.* at 7, 12. Contending that he paid $36,000,000 to the Government, Plaintiff reported to the IRS payments in that amount against a tax liability of $8,834,912 on his 2023 tax return, purportedly entitling him to a refund of $27,165,088. ECF No. 9-2 at 3. On January 27, 2025, he amended his return to show a liability of $4,798,502 and a refund entitlement of $31,201,498. *See* Mot. at 3; ECF No. 9-1 at 19; ECF No. 9-4 at 1–2.

In a January 21, 2025, letter, the IRS indicated to Plaintiff that it did not have the payments described in his return or any record of receiving them. ECF No. 9-1 at 15. In a subsequent examination, Plaintiff provided his UCC forms and the BOA and Ventura County documents to the IRS, which then discovered the underlying California state court case. *Id.* at 6–8. On August 15, 2025, the IRS determined based on its review of the case that Plaintiff's "[refund] claim [was] not valid as . . . the taxpayer was never awarded with th[e] money in question." *Id.* at 8. It therefore concluded that Plaintiff's reported income and payments were not substantiated, denied his administrative claim, and reduced his taxable income, estimated payments, and refund entitlement to $0. *Id.* at 4, 8, 13.

---

[4] The Court references this document as the "Ventura County Document."

## III. Plaintiff's Prior Actions

Plaintiff disagreed with the IRS's determination; he emphatically maintained that the BOA and Ventura County documents, and their associated UCC-1 forms, were evidence of payment and that he was entitled to a refund. *See* Compl. ¶¶ 9–15, 53–56. On November 3, 2025, he therefore brought an action in the Court of Federal Claims seeking a tax refund. *Carter v. United States*, No. 25-1884, 2025 WL 3639166 (Fed. Cl. Dec. 16, 2025) ("*Carter I*"). In that case, the court issued a show cause order after finding that Plaintiff's complaint contained "facial jurisdictional shortcomings." *Id.* at *2. To determine whether the court had jurisdiction, the order required Plaintiff to produce evidence that he "(1) fully paid any tax deficiencies; (2) duly filed a claim for refund; and (3) waited at least six months after filling a refund claim . . . before filing this suit." *Id.* at *3. Plaintiff did not respond, and on December 16, 2025, Plaintiff's complaint was dismissed for failure to prosecute and for lack of subject matter jurisdiction. *Id.*

Less than two weeks later, on December 29, 2025, Plaintiff filed a second, substantially similar action in the Court of Federal Claims. *See* Fed. Cl. No. 25-2178, Dkt. 1 ("*Carter II*"). There, the Government moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. Fed. Cl. No. 25-2178, Dkt. 7. The court agreed with the Government, finding that because the BOA and Ventura County documents were not valid modes of payment under 26 U.S.C. § 6311(a) and 26 C.F.R. § 301.6311-1(a)(1)(i), Plaintiff had not shown that he had paid his alleged tax liability for 2023. Fed. Cl. No. 25-2178, Dkt. 9 at 3–4. Because full payment is a "jurisdictional prerequisite" for the Court of Federal Claims to hear a tax refund action, the court concluded that it lacked subject matter jurisdiction and dismissed the complaint. *Id.* at 3, 5.

## PROCEDURAL HISTORY

On April 6, 2026, Plaintiff filed the present case, his third action seeking a tax refund. Compl. On June 8, 2026, Defendant moved to dismiss under Rules 12(b)(1) and 12(b)(6). Mot at 1. On June 15, 2026, Plaintiff submitted two documents entitled "Opposition to Defendant's Motion to Dismiss," ECF No. 11 (Response or Resp.), and "Notice of Clarification Regarding Amount Claimed," ECF No. 13 (Notice of Clarification), which the Clerk of Court marked as deficient. *See* Docket Entries dated June 15, 2026. By the Court's leave, both documents were filed on the docket. *See* ECF No. 10.[5] On June 30, 2026, Defendant filed a Reply in support of its Motion to Dismiss. ECF No. 14 (Reply). Plaintiff then filed a Motion for Leave to File a Sur-Reply on July 6, 2026. ECF No. 15. The Court granted Plaintiff's Motion on July 8, 2026, and ordered him to file his Sur-Reply by July 13, 2026. ECF No. 16 at 1. Plaintiff did not file a Sur-Reply.

## APPLICABLE LEGAL STANDARDS

### I. 12(b)(1)

Under the Tucker Act, this Court's jurisdiction is limited to suits against the United States for damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any . . . contract with the United States," excluding actions sounding in tort. 28 U.S.C. § 1491(a)(1); *see also RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United

[5] Plaintiff's Notice states that it does not modify any allegation in Plaintiff's Complaint. Notice of Clarification at 1. However, the Court, construing *pro se* filings liberally, considers the content of the Notice as well as Plaintiff's other pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023).

States."). The Tucker Act does not create substantive rights, nor does it grant this Court jurisdiction over "every claim invoking the Constitution, a federal statute, or a regulation." *RadioShack Corp.*, 566 F.3d at 1360 (quoting *United States v. Mitchell*, 463 U.S. 206, 216 (1983)). Rather, a plaintiff must "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (first citing *Mitchell*, 463 U.S. at 216; and then citing *United States v. Testan*, 424 U.S. 392, 398 (1976)).

This Court must dismiss claims beyond its subject matter jurisdiction. Rules 12(h)(3), 12(b)(1); *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019); *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (citing Rule 12(h)(3)) ("If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim."). When considering a 12(b)(1) motion to dismiss, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)). Though the Court must construe *pro se* pleadings liberally, *Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106), plaintiffs proceeding *pro se* must still prove subject matter jurisdiction by a preponderance of the evidence. *Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d. 1378, 1380 (Fed. Cir. 1987)).

**II. 12(b)(6)**

Pursuant to Rule 12(b)(6), this Court may dismiss an action for failure to state a claim upon which relief can be granted. To withstand a 12(b)(6) motion, the "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*see also Steffen v. United States*, 995 F.3d 1377, 1380 (Fed. Cir. 2021). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Matthews v. United States*, 750 F.3d 1320, 1322 (Fed. Cir. 2014) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But such complaints are nonetheless required to meet the plausibility requirement. *Steffen*, 995 F.3d at 1380; *see also Twombly*, 550 U.S. at 570. At the motion to dismiss stage, this Court must "accept as true the complaint's well-pled factual allegations" but need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

**DISCUSSION**

This Court lacks jurisdiction over Plaintiff's tax refund action because he has failed to prove by a preponderance of the evidence that he has satisfied the "jurisdictional prerequisite" of fully paying the tax at issue. *See Roberts v. United States*, 242 F.3d 1065, 1067 (Fed. Cir. 2001) (citing *Flora v. United States*, 362 U.S. 145, 177 (1960)). Likewise, Plaintiff has failed to state a claim upon which relief can be granted because he has not pled sufficient facts to state a plausible claim for relief. Accordingly, for the reasons below, this Court must dismiss the Complaint.

**I. This Court Lacks Jurisdiction over Plaintiff's Tax Refund Claim.**

Plaintiff fails to satisfy the jurisdictional requirements to bring a tax refund action in this Court. For this Court to hear such an action, Plaintiff must satisfy the "jurisdictional prerequisite" of showing that he has made "full payment" on the taxes allegedly owed. *Roberts*, 242 F.3d at 1067 (citing *Flora*, 362 U.S. at 177); *Shore v. United States*, 9 F.3d 1524, 1526–27 (Fed. Cir. 1993).

Plaintiff has not made that showing because the BOA and Ventura County documents are not "commercially acceptable means" of tax payment under 26 U.S.C. § 6311(a) and 26 C.F.R. §

301.6311-1(a)(1)(i).[6] Under 26 U.S.C. § 6311(a), income taxes can be paid to the IRS in "any commercially acceptable means that the Secretary deems appropriate to the extent and under the conditions provided in regulations prescribed by the Secretary." The relevant regulation permits payment by "checks or drafts drawn on any [domestic] financial institution . . . or money orders" that are collectible in United States Currency at par value. 26 C.F.R. § 301.6311-1(a)(1)(i) (2025).

The BOA and Ventura County documents do not satisfy the requirements of 26 C.F.R. § 301.6311-1(a)(1)(i). The BOA document, entitled "Trust Indenture," purports to "order" BOA to extend to Plaintiff an involuntary "line of credit" in exchange for his interest in the Victoria Lane property. ECF No. 1-2 at 11. Likewise, the Ventura County document purports to "order" Ventura County to pay Plaintiff "damages" for "fraud, extortion, failure to perform a public duty, and emotional distress caused for fear of losing priority of chain of title." ECF No. 1-2 at 7. Even if these self-styled documents evidenced legitimate obligations against BOA and Ventura County—and they do not[7]—they would not be an acceptable means of tax payment because they are not

[6] Defendant argues in its Motion that "the IRS has no record of receiving" the BOA and Ventura County documents or any other purported "payments from [P]laintiff for tax year 2023." Mot. at 8. However, Defendant's own exhibits show that "taxpayer [Plaintiff] provided 2 UCC filings" to the IRS, "one with Ventura County" and another with "Hilltop Trust" that was accompanied by a "Letter of Intent with US Bank, NA., to support the claim." ECF. 9-1 at 10. The IRS examination files name U.S. Bank as a secured party in the BOA document, but the document itself names "Bank of America, N.A." as a secured party. ECF No. 9-3 at 9. Defendant accordingly may be mistaken in contending that the BOA and Ventura County documents were never delivered to the IRS.

[7] Notwithstanding that they are not "checks," "drafts," or "money orders," Plaintiff's documents cannot be tax payments because they do not evidence legitimate financial obligations. Under California law, a security interest is not enforceable unless "(a) the collateral is in the possession of the secured party" or "(b) the debtor has signed a security agreement." *In re Amex-Protein Dev. Corp.*, 504 F.2d 1056, 1057 (9th Cir. 1974) (citing Cal. Civil Code § 9203 (1974)). Here, Plaintiff does not have possession of the Victoria Lane property and has not provided anything, much less a security agreement, signed by representatives of BOA or Ventura County. *See Yasharel*, 2021 WL 12133880 at *2; *Ben-Yashar'el*, 2022 WL 2763324 at *2. He has only provided a pair of UCC-1 financing statements and the attached documents. *See* ECF No. 1-2 at 3–12. "In the

"checks," "drafts," or "money orders" collectable in United States currency. 26 C.F.R. § 301.6311-1(a)(1)(i). Rather, both documents are self-drafted instruments, not issued or countersigned by BOA or Ventura County, and neither is drawn against an actual account at BOA or Ventura County. *See* ECF. 1-2 at 3–12. Such instruments are not "commercially acceptable means" of tax payment under 26 U.S.C. § 6311(a) and therefore are not evidence that Plaintiff has paid the taxes allegedly owing for tax year 2023.

The UCC-1 financing statements to which the BOA and Ventura County documents are attached fair no better. UCC-1 forms are not "checks," "drafts," or "money orders" within the meaning of 26 C.F.R. § 301.6311-1(a)(1)(i). Rather, they are notice filings designed to make third parties aware that an encumbrance may sit upon a piece of property. *See Helms v. Certified Packaging Corp.*, 551 F.3d 675, 679 (7th Cir. 2008) (explaining that a financing statement serves to put third parties on notice that the filer may claim an interest, not to establish the interest or to pay tax liability). Thus, the UCC-1 forms, like the BOA and Ventura County documents, are not evidence that Plaintiff paid the taxes he purports to owe.

Without evidence that he has paid the taxes for which he seeks a refund, Plaintiff has not met his burden of proving that this Court has subject matter jurisdiction. *See Flora*, 362 U.S. at 177; *Shore*, 9 F.3d at 1526 ("[T]he taxpayer must pay all taxes, penalties, and interest that have been assessed before the Court of Federal Claims will have jurisdiction to hear a tax refund suit."); *Colbert*, 617 F. App'x at 983 (citing *Kelley*, 812 F.2d. at 1380). Therefore, this Court is without

---

absence of a valid security agreement, a [UCC-1] financing statement does not create an enforceable security interest." *In re Wes Dor, Inc.*, 996 F.2d 237, 239 n.2 (10th Cir.1993). Thus, there is no evidence that Plaintiff's purported obligations against BOA and Ventura County are legitimate.

jurisdiction to hear this action, and Plaintiff's Complaint must be dismissed. Rules 12(b)(1), 12(h)(3).

## II. Plaintiff Has Not Stated a Plausible Claim for Relief.

Plaintiff likewise fails to state a claim upon which relief can be granted. To withstand a Rule 12(b)(6) motion, a plaintiff's complaint must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When a complaint offers merely "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" without facts justifying its conclusions, it must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Here, Plaintiff's Complaint lacks sufficient facts to allege a tax refund claim that is plausible on its face. Rather than claiming the existence of particular facts giving rise to his claim for relief, Plaintiff's Complaint "formulaic[ally] recit[es] the elements of [his] cause of action" and consists almost entirely of legal argument. *Twombly*, 550 U.S. at 555. The Complaint does not describe in any meaningful detail when, where, or how Plaintiff paid his taxes, but nakedly asserts that he "remitted amounts that fully satisfied and exceeded the assessed liability for [tax year 2023]." Compl. ¶ 4.a. It later states that Plaintiff's remittances "were *monies*, *transferred* and *payable* in *United States currency*," and defines each emphasized word in reference to 31 C.F.R. § 206.2 and 31 U.S.C. § 5103. *See id.* ¶ 12 & nn.1–5 (emphasis in original) (footnotes omitted). Though this Court must "accept as true the complaint's well-pled factual allegations," it need not "accept the asserted legal conclusions" presented by Plaintiff without factual support. *Am. Bankers Ass'n*, 932 F.3d at 1380. Construing the Complaint liberally, as this Court must, *see Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106), Plaintiff has pled sufficient facts to state that he sent

the BOA and Ventura County documents to the IRS, which did not acknowledge them as tax payment and which denied his administrative claim for a refund. Compl. ¶¶ 10, 14, 45–47.

Plaintiff has not, however, pled sufficient facts to show that he paid the taxes for which he claims a refund. The BOA and Ventura County documents, as discussed above, are not "checks," "drafts," or "money orders," within the meaning of 26 C.F.R. § 301.6311-1(a)(1)(i). The Complaint does not allege that Plaintiff paid his taxes through any means other than those documents. It therefore fails to state sufficient facts to plausibly claim that Plaintiff did, in fact, pay his taxes. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As a plaintiff who has not paid the entire amount of tax assessed against him is not entitled to a tax refund, the allegations in Plaintiff's Complaint cannot possibly entitle him to relief. *See Flora*, 362 U.S. at 177; *Shore*, 9 F.3d at 1526–27. Thus, Plaintiff's action must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 9), and **DISMISSES** Plaintiff's Complaint (ECF No. 1). *See* Rules 12(b)(1), 12(b)(6), 12(h)(3). The Clerk of Court is **DIRECTED** to enter Judgment accordingly and mark this case as closed.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

October 16, 2026
Washington, D.C.